**In re George Andrew YAKUBESIN, Debtor.**

George Andrew YAKUBESIN, Plaintiff,

v.

**Danusia YAKUBESIN, Defendant.**

**Bankruptcy No. 2–87–02842.**
**Adv. No. 2–87–0220.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Jan. 27, 1988.

Thomas R. Allen, Susan L. Rhiel, Thompson, Hine and Flory, Columbus, Ohio, for plaintiff.

Joseph F. Castner, Johnstown, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT TO SELL INTEREST OF CO-OWNER IN REAL PROPERTY

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Statement of the Proceedings*

This matter is before the Court following trial on January 21, 1988, of a Complaint filed by George Yakubesin, the debtor in a Chapter 13 case pending before this Court. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(2)(N).

George Yakubesin ("Plaintiff") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on June 25, 1987. Plaintiff filed his Complaint on July 22, 1987, seeking authority of the Court to sell both his one-half interest (which became property of the bankruptcy estate pursuant to 11 U.S.C. § 541 as of the petition date) and the one-half interest owned by Danusia Yakubesin ("Defendant") in real property located at 9610 Palmer Road, Pataskala, Ohio (the "Property"). Plaintiff seeks Court authority to sell the Property pursuant to 11 U.S.C. § 363(h). The Defendant does not oppose the sale of the Property. The Defendant does, however, oppose the sale of the Property to the party with whom the Plaintiff has entered into a real estate purchase contract. Defendant's opposition to the proposed sale is based upon her belief that she has obtained a more favorable offer upon the Property. She contends that acceptance of this alternative offer will result in both the estate and the Defendant realizing a greater monetary benefit than if the sale proposed by Plaintiff is authorized and consummated.

The following shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### II. *Findings of Fact*

1. Plaintiff and Defendant are joint owners of the Property. The Property consists of a three-bedroom, two-bath, wood frame house which is situated upon approximately five acres of land in western Licking County, Ohio. Several outbuildings, including a detached two-car garage and an eight stall horse barn are also situated upon the Property. The house upon the Property was constructed by the Plaintiff. Several portions of the house, including the loft and the deck, have not been completed. The outbuildings have suffered recent wind damage (including glass breakage and destruction of areas of the outbuildings' roofs) and are in need of repair.

2. On December 23, 1985, an Agreed Entry of Divorce ("Divorce Decree") was filed in the Common Pleas Court of Licking County, Ohio, dissolving the marriage between Plaintiff and Defendant. Pursuant to the terms of this Divorce Decree, the Property was to be immediately listed for sale, with the Defendant retaining exclusive possession of the Property until it was sold.

3. The Property had been listed for sale with H.E.R. Real Estate, Inc. for some time prior to the parties' divorce. Immediately prior to the entry of the Divorce Decree (on November 12, 1985), the parties listed the Property with Holzer, Wollam, White &

Strait Realtors ("Holzer–Wollam"). Katie Swope ("Swope") of Holzer–Wollam is the listing agent for the Property. An exclusive listing agreement has been in existence by and between Holzer–Wollam and the Defendant from November 12, 1985, to the present by virtue of the Defendant's continuous renewal of the original agreement every 180 days. The Plaintiff signed the original listing agreement with Holzer–Wollam (which was effective from November 12, 1985, to May 12, 1986), but has refused to renew the listing agreement with Holzer-Wollam.[1] Plaintiff maintains that he presently is not a party to a listing agreement with Holzer–Wollam and, therefore, will not be responsible for payment of a realty sales commission in the event that the Property is sold to a purchaser who is not produced by Swope or another Holzer–Wollam agent.

4. The Property was originally listed for sale at a price of $139,000. In subsequent listings the offering price has been reduced to $129,000 and then to $125,000, and is presently listed for sale at $114,900.

5. The parties agree that, before any sale of the Property may be consummated, a favorable Sewage Inspection Report from the Licking County Health Department ("Health Department") must be received. The most recent Sewage Inspection Report, which was conducted by the Health Department on April 7, 1987, disapproved the Property's sewage system. The parties disagree with respect to the extent and cost of repairs necessary to bring the sewage system into compliance with Health Department standards. Plaintiff testified that, based upon an estimate he has received from Clayton Excavating & Septic System ("Clayton"), he believes that an expenditure of approximately $4,200 must be made to repair the sewage system. The Plaintiff also testified that Clayton's repair would involve the following:

(a) removal of the septic tank presently located on the property;

(b) installation of a leaching system;

(c) installation of a distribution box and a curtain drain; and,

(d) installation of a new septic tank.

No actual estimate by Clayton or any other excavating contractor was offered into evidence. Defendant conceded that she has had no direct contact with any excavating contractor regarding the Property's sewage system. Her discussions about the sewage system have been limited to conversations with Plaintiff and Swope. In the course of these discussions, various repair estimate figures were mentioned by the Plaintiff and Swope, with the highest being $2,000. She first became aware of the $4,200 estimate during the course of the trial.

6. From November of 1985 until the present, Swope has shown the Property to approximately forty-five (45) potential purchasers. During this time period, two written offers have been made upon the Property by prospective purchasers produced by Swope. The first written offer to purchase the Property was made by Herbert Leitwein ("Leitwein") on March 10, 1987. Leitwein offered to purchase the Property for $100,000. Following a series of counter-offers, Leitwein made a final offer to purchase the property for $108,000. While the Leitwein offer was pending, a second offer to purchase the Property was made by Thomas and Linda Pace ("Pace"). The Paces' final offer to purchase the Property for $114,000 was accepted by the Plaintiff and Defendant on March 27, 1987. The Paces made two unsuccessful attempts to secure financing for the purchase of the Property and, hence, the parties were unable to close the sale.

7. No further offers were made on the Property until Lloyd D. Holman tendered a purchase offer in the amount of $92,000 to the Plaintiff on July 21, 1987 ("Holman offer"). The Holman offer, as originally worded, was contingent upon the sellers' repair of the sewage system prior to closing. Because the Holman offer was made during a time period when the Property

---

**1.** The Plaintiff did agree to renew the listing agreement with Holzer–Wollam in March of 1987 when it appeared that Swope had produced a ready, willing and able buyer for the Property.

was listed by Holzer–Wollam pursuant to a listing agreement which was not signed by Plaintiff, Plaintiff contends that a sale to Holman will not be subject to the seven percent (7%) real estate commission provided for by the Holzer–Wollam listing agreement.

8. Holman, a long-time friend of the Plaintiff, became interested in purchasing the Property after being informed by the Plaintiff that the parties had experienced difficulties in selling the Property since it was initially listed in November of 1985. Holman has been assisted by the Plaintiff in the purchase and sale of other properties in the past. Holman, his wife, and his teen-age daughter currently reside in a four-bedroom home in Reynoldsburg, Ohio. If his offer is accepted, Holman plans to reside, along with his wife and daughter, in the house located on the Property. Holman does not plan to farm the Property and, therefore, he testified that he is not interested in using the outbuildings located on the Property. Holman has been on the Property several times, but never for the purpose of inspecting the Property in connection with its purchase. Holman has never been inside the house located on the Property. Holman's first offer of purchase on the Property was rejected by the Plaintiff because he believed that it was too low. The Plaintiff expressed his willingness to accept Holman's $92,000 offer in July of 1987; however, the Defendant would not assent to the sale of the Property at the $92,000 amount offered by Holman.

9. Holman has obtained a commitment from Household Bank ("Household") to finance his purchase of the Property. This commitment will expire on February 15, 1988. The commitment, by its terms, may be extended beyond February 15, 1988, subject to Household's right to adjust its prevailing interest rate and fees. Holman has agreed to delete the sewage system contingency from the contract and has assumed the obligation of repairing the sewage system at his own expense prior to the date of expiration of Household's loan commitment. Holman intends to personally perform the work that is needed to obtain approval from the Health Department.

10. In addition to the Holman offer, the parties have also recently received a second offer on the Property. On January 4, 1988, Leitwein, after being informed by Swope of the Holman offer and the pendency of this proceeding, offered to purchase the Property for $105,000 ("Leitwein offer").[2] Leitwein has applied for financing from The Kissell Company ("Kissell"). A letter from Steve Stroecklin ("Stroecklin"), a Kissell representative, was admitted into evidence as Defendant's Exhibit 4. The letter of Stroecklin states that, based upon the initial information provided Kissell, Leitwein appears to meet Kissell's loan criteria. However, Stroecklin's letter contains the following disclaimer:

"This is an initial opinion and should not be construed as any type of commitment for a mortgage loan."

The Defendant has been advised by Swope that she is virtually certain, based upon her meetings with Leitwein, that he will receive loan approval from Kissell.

11. The uncontradicted testimony of the Plaintiff establishes that the following encumbrances are outstanding with respect to the parties' joint interest in the Property:

| | | |
|---|---|---:|
| (a) | 1st Mortgage–Pataskala Bank | $62,903.66 |
| (b) | 2nd Mortgage–County Savings Bank | 6,079.26 |
| (c) | Federal Tax Lien | 6,280.60 |
| (d) | Ohio Tax Lien | 1,442.98 |
| (e) | Unpaid Real Estate Taxes | 3,610.92 |
| | TOTAL | $80,817.87 |

Interest in the amount of $35.52 *per diem* is accruing on the obligations which underly the encumbrances set forth above.

12. Liens held solely against the Plaintiff's one-half interest in the Property are as follows:

| | | |
|---|---|---:|
| (a) | Bank One | $ 6,896.00 |
| (b) | Fry Bros. | 6,463.36 |
| (c) | Paul Stanley | 2,807.15 |
| (d) | O'Brian's | 10,000.00 |
| | TOTAL | $26,166.51 |

Plaintiff conceded that any proceeds realized from the sale of the Property will be totally consumed by the first lien held sole-

---

2. Leitwein had previously made an offer of $108,000 for the Property in March of 1987. The parties rejected this offer after later receiving the offer made by the Paces in the amount of $114,000.

ly against his one-half interest in the Property. However, the Plaintiff contends that satisfaction of both the joint liens and a portion of the liens held solely against Plaintiff's one-half interest will greatly benefit the estate by producing increased equity in a second parcel of real property that is owned by the Plaintiff (the "Highlander Dry–Cleaning Building"). Plaintiff proposes to sell the Highlander Dry–Cleaning Building during the course of his Chapter 13 case and pay the proceeds obtained therefrom to the Chapter 13 Trustee to satisfy claims against his estate.[3]

### III. *Conclusions of Law*

The Plaintiff seeks to sell both the interest of the estate and the interest of the Defendant, the co-owner of the Property, pursuant to 11 U.S.C. § 363(h). Section 363(h) provides:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, immediately before the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Application of the four criteria of § 363(h) to the record before the Court reveals that the area of dispute between the parties in this case is narrowly circumscribed. No evidence was adduced by either party to establish that the Property is used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. Defendant has not contended that partition of the Property is practicable, nor has she argued that sale of the estate's undivided interest would realize as much, or nearly as much, for the estate as the sale of the Property free of Defendants' undivided one-half interest. Accordingly, no dispute exists with respect to the factors enumerated in subsections (1), (2), or (4) of § 363(h). Resolution of this case, therefore, will hinge on the third condition of § 363(h)—*i.e.*, whether the benefit to the estate from the proposed sale outweighs the detriment to the Defendant.

The Defendant has not asserted that she will suffer hardship by virtue of the sale of the Property. The Divorce Decree, which was entered by the Licking County Common Pleas Court in December of 1985, contemplated the sale of the Property. The Divorce Decree was entered by consent of both parties. Since December of 1985, the Defendant has known that the Property would be sold and that she would be relocating to another residence. Hence, the basis of the Defendant's opposition to the sale of the Property is not that she will suffer hardship due to relocation. Instead, Defendant posits that the estate, as well as the Defendant, will realize a greater benefit if the Court orders that the sale of the Property be made to Leitwein as opposed to Holman. At bottom, then, this case boils down to a determination of whether acceptance of the Holman offer or the Leitwein offer will be more beneficial to the estate.

Plaintiff argues that a comparison of the Holman and Leitwein offers leads to the inescapable conclusion that the Holman offer, which presents the estate with a ready, willing and, most importantly, able buyer, is more beneficial to the estate than the

---

**3.** Greater equity will be created with respect to the Highlander Dry–Cleaning Building since it is also encumbered by all of the liens listed above.

Leitwein offer, which is contingent upon a final loan commitment by Kissell. Counsel for the Plaintiff contends that this conclusion may be derived simply through applying the rationale of the familiar maxim "a bird in the hand is worth two in the bush." Plaintiff supports this assertion with the following calculation:

|  | Holman Offer | Leitwein Offer |
| --- | --- | --- |
| Purchase Price | $92,000.00 | $105,000.00 |
| Broker's Commission | –0– | (7,350.00) |
| Sewer Repair Cost | –0– | (4,200.00) |
| Net Sale Proceeds | $92,000.00 | $93,450.00 |

Based upon the foregoing calculation, Plaintiff contends that the $1,450.00 differential between the offers is offset completely by the interest which will accrue on the outstanding encumbrances while Leitwein awaits final loan approval. In addition, Plaintiff contends that if Leitwein is unsuccessful in his attempt to secure financing, the estate could lose the Holman offer, which has been pending since July of 1987.

Defendant counters Plaintiff's contentions by questioning the *bona fides* of the agreement between Holman and the Plaintiff, arguing that the proposed sale to Holman is not an arm's length transaction. The Defendant also contends that a good possibility exists that, if the Property is sold to Holman, Holzer–Wollam will claim an entitlement to a commission on this sale and will commence litigation in order to attempt to collect the commission.[4] Hence, Defendant submits that the Property should be ordered sold to Leitwein instead of Holman.

At first blush, the logic of the Plaintiff's position appears to be unassailable. A mere $1,450 separates the Holman and Leitwein offers. This $1,450 differential will be offset by the accrual of interest on the outstanding encumbrances during the time required for Leitwein to obtain final loan approval and close the sale of the Property. Thus, it would appear to be in the best interests of the estate if the Property were immediately ordered to be sold to Holman. If the Court were satisfied that each of the premises underlying Plaintiff's argument were correct, it would have little difficulty finding in his favor. However, as the discussion below demonstrates, the Court cannot accept several of the assumptions upon which Plaintiff's argument is predicated.

Plaintiff's numerical comparison of the Holman and Leitwein offers assumes that the cost of repairing the sewage system on the Property will be approximately $4,200. The Plaintiff bases this $4,200 repair estimate upon a conversation with a representative of Clayton. The Court does not find Plaintiff's testimony regarding the $4,200 sewer repair to be credible and, thus, is not convinced that $4,200 should be deducted from the Leitwein offer. The $4,200 sum was not supported by a written estimate from Clayton. No testimony was offered as to whether a representative of Clayton actually inspected the sewage system or prepared an estimate of the cost to repair it. In fact, the $4,200 repair figure is based solely upon unsubstantiated, hearsay testimony. The credibility of Plaintiff's testimony regarding the $4,200 repair cost is further diminished by Defendant's testimony that she had spoken with the Plaintiff and Swope regarding the necessary sewage repair several times and the highest repair estimate amount which was mentioned prior to the trial was $2,000. Defendant was never informed that an expenditure of $4,200 would be required to repair the sewage system and first became aware of this figure at the trial of this matter. In short, based upon its assessment of the credibility of the parties' testimony, the Court is not prepared to accept the premise that a deduction in the amount of $4,200 must be made from the Leitwein offer.

The Court also cannot accept the presumption that a sale of the property to Holman will not be subject to Holzer–Wol-

---

4. Given the fact that Holzer–Wollam has been a party to the exclusive listing agreement with the Defendant for more than three years and the fact that Swope has shown the Property to ap-proximately 45 prospective purchasers, it is certainly probable that Holzer–Wollam will claim an entitlement to a commission if the Property is sold to Holman.

lam's 7% brokerage commission. The mere fact that Plaintiff was not a party to the exclusive listing agreement which was in effect at the time he accepted the Holman offer fails to compel the conclusion that Holzer–Wollam will not be entitled to a commission if the Property is sold to Holman. Moreover, as the Defendant aptly points out, even if Plaintiff's position with respect to the brokerage fee is ultimately upheld, the possibility that Holzer–Wollam will commence litigation in order to attempt to collect a commission, which would be costly to both the estate and the Defendant, is very real. Thus, the Court cannot accept the proposition that the sale of the Property to Holman will necessarily be free of a 7% brokerage commission.[5]

In sum, based upon the totality of the facts which were adduced at the trial of this matter, the Court believes that a greater benefit would be realized by the estate if the Property is sold to Leitwein.[6] The Court is cognizant, however, of the possibility of detriment to the estate if there are delays in the closing of the sale to Leitwein —i.e., continuing accrual of interest and the risk of losing the offer of a ready, willing and able purchaser.

Accordingly, the Court ORDERS as follows:

(1) The Defendant shall have until the close of business on **February 10, 1988,** to file with the Clerk of this Court, and serve upon the Plaintiff, documentary evidence establishing that Leitwein has obtained a binding loan commitment from Kissell or another lender along with a proposed order authorizing the sale of the Property to Leitwein;

(2) In the event that Defendant fails to file proof of a binding loan commitment within the time period provided by the foregoing paragraph, the Plaintiff shall submit a proposed Order to the Court authorizing the sale of the Property to Holman, which the Court shall enter forthwith.

IT IS SO ORDERED.

---

**5.** Plaintiff also argues that, as a matter of bankruptcy law, the sale to Holman would not be subject to a realty commission. Plaintiff contends that a sale pursuant to § 363(h) is a sale by the estate, and because Holzer–Wollam is not a party to a listing agreement with the estate, Holzer–Wollam would be precluded from collecting a 7% commission on the sale of the Property to Holman. Plaintiff offered no authority in support of this interpretation of § 363(h). The Court need not dispose of this issue in resolving the issue before it. The Court notes, however, that Plaintiff has also failed to demonstrate why the converse of its legal argument would not serve to benefit the Defendant. That is, if the Plaintiff's position is legally correct (that a sale by the estate pursuant to § 363(h) will be free of a brokerage commission) then the Court can conceive of no reason why the sale of the Property to Leitwein by the estate would likewise not be subject to a brokerage commission.

Finally, it is also conceivable that, if Plaintiff's position regarding Holzer–Wollam's entitlement to a commission were ultimately sustained, Holzer–Wollam would nevertheless have a claim for an administrative expense against the estate for the value of the services it has performed.

**6.** The record in this case does not contain sufficient facts to definitively establish that the Holman offer did not arise as the result of an arm's length transaction. The Court notes, however, that the transaction between Plaintiff and Holman is questionable in several respects. Perhaps the most suspicious aspect of the proposed sale to Holman is the fact that Holman has never inspected, nor even been inside the residence located on the Property. It strains credulity to suggest that Holman would offer to purchase the house on the Property sight unseen, particularly in light of the fact that Holman plans to reside there with his wife and daughter.